J-A24030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| OMONT WIGGINS, | |
| Appellee | No. 2578 EDA 2013 |

Appeal from the Order August 8, 2013
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0001600-2011

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED DECEMBER 09, 2014**

Appellant, the Commonwealth of Pennsylvania, appeals from an order granting suppression of physical evidence.  The Commonwealth argues the suppression court erred in suppressing evidence as a remedy for admitted violations of the Rules of Criminal Procedure.  After careful review, we affirm.

On December 11, 2010, Appellee Omont Wiggins was arrested, and he was subsequently charged with multiple violations of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §780-101 – 780-113.1, as well as conspiracy and person not to possess firearms.  On April 15, 2011, Wiggins filed a pretrial suppression motion.  A hearing on the motion

_____

[*] Retired Senior Judge assigned to the Superior Court.

was held on March 26, 2012. The court summarized the facts adduced at the suppression hearing as follows:

> Late at night on December 11, 2010, police were staking out an apartment house in Cheltenham Township, Montgomery County.
>
> …
>
> The supervising sergeant on the scene saw two unknown men who seemed to have emerged from the building come down the sidewalk, get into a car, and drive off. The sergeant observed that, in his words, it "rolled" or "slid" through two stop signs, and was going too fast. The sergeant followed the vehicle and stopped it, radioing for backup, which arrived shortly in the form of two other officers from the stakeout.
>
> The sergeant ran a check on the vehicle and determined it was registered to a female, and, upon asking the driver for license and registration, was told he had no license. The driver said the car was his aunt's, but the two men in the car fumbled in the glove compartment before producing the registration, which behavior the sergeant found suspicious. The sergeant pulled the driver from the car and he was patted down for weapons, whereupon packets of cocaine fell from his belt to the ground, and he was arrested.
>
> The sergeant also questioned the passenger, [Wiggins]. At first the sergeant heard [Wiggins] identify himself as "Omar" Wiggins, but then he produced a card with the name "Omont" Wiggins. [Wiggins] also verbally gave the sergeant a date of birth later determined to be off by one day. [Wiggins] appeared to be passing over a Pennsylvania license among his papers, so the sergeant asked to see it. That license bore the name "Omount" Wiggins, and had a birth date that matched up with the name when run through a background cheek. After being removed from the car and patted down by one of the officers … [Wiggins] revealed that he stayed with his girlfriend in the apartment building the officers had been surveilling, and described how to get to her apartment on the second floor. The officers took [Wiggins] into custody too, apparently for false identification to law enforcement authorities under 18 Pa.C.S. § 4914….

[A]s [Wiggins] and the driver of the vehicle were taken to the police station for processing, the officers returned to the apartment building to investigate.

…

The sergeant and the other two officers who responded to the car stop then went to the second floor to locate the apartment [Wiggins] had described. They knocked on the door, and a female answered, opening the door only partially. She confirmed she was [Wiggins]'s girlfriend and he lived there with her.

The officers noticed a strong pungent odor of raw marijuana wafting from the apartment. Upon questioning, the female said if there was marijuana inside, it [was not] hers.

The sergeant and one of the officers (the affiant) claimed the female then verbally consented to their request to search the apartment. … [This court] explicitly found the theory that there was consent to search not to be credible….

The police took the female … to the station, and set about to obtain a warrant to search her apartment. The third officer, who had been present at both the traffic stop and the initial encounter with the female, stayed behind, and according to all three officers testifying at the hearing the apartment was "secured" while the others returned to the station. In fact the third officer testified, alone among the three, that, "I was in the apartment prior to that for a sweep when we originally made contact with one of the residents that lived in the apartment."

…

Meanwhile, back at the station the sergeant interviewed several of the detainees while the other officer prepared an affidavit of probable cause to submit to a magistrate in support of an application for a search warrant.

…

It was now the early morning of December 12, 2010, a Sunday, and rather than take his application for a search warrant before the regular local district judge, the officer had to go through county dispatch to contact the judge on duty … and arrange the audio-visual hookup required by the [Rules of Criminal Procedure] in the absence of an in-person presentation

of the affidavit and application. The officer did not know at the time the whereabouts of [the Judge] or his office (which the officer later learned was in Willow Grove, judicially noted to be less than half an hour's drive from Cheltenham) and … the two were previously unacquainted. [The Judge] informed the officer that the visual component (of the audio-visual communication required by the rule) would not be necessary, and that the application and warrant would be handled by fax and telephone alone… Thus, the officer confirmed there was no video done of the search-warrant procedure, but that it was done only telephonically, and, furthermore, "We have done that in the past."

The officer typed an application and affidavit of probable cause to search the second floor apartment onto a computer form, printed it out, and signed it. He sent the signed application for the search warrant and affidavit by fax to [the Judge]. The officer and the Judge communicated back and forth by telephone about the application, with the Judge pointing out a problem in the papers that needed correcting. The officer corrected the problem and sent a redone application back by fax. At some point the Judge asked the officer over the telephone whether he swore that the facts set forth in the affidavit were true and correct, and the officer stated he did. The Judge then, according to the officer, signed the completed warrant and returned it to him by fax.

The officer indicated in his testimony this back-and-forth process took place over a matter of minutes. However, he also indicated he was waiting anxiously for the final warrant to come back by fax from the Judge because, "We must have called each other numerous times because there was [*sic*] fax issues, but eventually it came over and I received the copy and I told the Judge I have the copy, everything is good[,] and then I went directly from the police station to the location in question."

    …

[T]he actual search warrant, affidavit, and inventory of property seized were never filed with the Clerk of this Court as required by Pa.R.Crim.P. 210. The first evidence of record of the warrant is the copy the Commonwealth introduced as an exhibit at the hearing on suppression. This copy bore indicia of having been sent back and forth by fax. Both the officer's signatures on each of the three pages of the exhibit and the Judge's, as well as

the Judge's seals, are facsimiles…. The facsimiles of the Judge's signature on the front page attesting the oath and authorizing the warrant indicates … the time of affixation as 7:00 A.M., December 12, 2010. Each of the three pages displays two fax "tags" at the top. The first page indicates a fax emanating from [the Judge] at 6:49 A.M., with the next two pages showing 6:50 A.M. Beneath these lines appear machine-generated tags indicating, on the first page, a fax from the Cheltenham Police at 7:48 A.M., and on the next two pages 7:50 A.M. The officer at the hearing could not explain the discrepancies in time….

…

The Pennsylvania Rules of Criminal Procedure require that a copy of a search warrant that is served when no one is present at the premises searched must be left there in a conspicuous place together with the supporting affidavit(s) and a receipt for any property seized. Pa.R.Crim.P. 208. At the hearing, the defense introduced into evidence the actual documents the police left in the second-floor apartment of [Wiggins] and his girlfriend, through the testimony of the girlfriend, whom we found to be credible. After she was released from custody, the search of the apartment had concluded, and she was allowed to reenter her home, she found copies of the warrant/affidavit and receipt on a coffee table where the police testified they had been left and [she] turned them over to [Wiggins]'s attorney, who retained them until the hearing. The receipt is a yellow carbon copy of an original signed by the sergeant and the affiant showing the time of the search as 7:17 A.M. (The same time of search appears on a copy of the "Return of Service and Inventory" that the affiant prepared and the Commonwealth introduced as an exhibit. As stated, the issuing authority never filed these documents with the Clerk of Courts as required by Pa.R.Crim.P. 210, and the originals were not in evidence.) The copy of the warrant and supporting affidavit found on the table bears the affiant's original (raised) signature on each of its three pages. However, this copy is neither signed, dated, nor filled out in any manner by the District Judge (nor does it bear the fax tags appearing on the Commonwealth's exhibit). … The officers insisted they did not enter the apartment to conduct the search until the affiant arrived back on the scene with a copy of the warrant signed and sealed by the Judge.

Trial Court Opinion (TCO), 2/19/14, at 1 - 10 (citations to the record omitted).

On August 8, 2013, the court granted Wiggins's suppression motion. The Commonwealth filed a timely notice of appeal, and certified that the suppression court's order would terminate or substantially handicap the prosecution in the instant case. Pa.R.A.P. 311(d). Likewise, the Commonwealth filed a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and now presents the following questions for our review:

1. Whether the lower court erred in suppressing the evidence retrieved from [Wiggins]'s apartment based solely on technical violations of the Pennsylvania Rules of Criminal Procedure, where the purported violations did not implicate fundamental, constitutional concerns, were not committed in bad faith, and did not substantially prejudice [Wiggins]?[1]

Commonwealth's brief at 4.

Our standard of review in addressing a challenge to an order granting suppression of evidence is well-settled: "The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an

_____

[1] We note that, even assuming that we were to reverse the trial court's order, the instant case would be remanded for further proceedings regarding suppression. Appellee Wiggins preserved a pretrial challenge to the "four corners of the affidavit," *i.e.*, that the warrant was not supported by probable cause. TCO at 12. The suppression court explicitly declined to reach this claim, having concluded suppression was required on other grounds. ***Id.***

- 6 -

appellate court, whose duty is to determine if the suppression court properly applied the law to the facts." ***Commonwealth v. Chernosky***, 874 A.2d 123, 124 (Pa. Super. 2005) (internal citations omitted). Furthermore, we note that "this Court is not bound by the rationale of the trial court, and we may affirm the trial court on any basis." ***Commonwealth v. Williams***, 73 A.3d 609, 617 n. 4 (Pa. Super. 2013) (internal citations omitted).

Initially, we are compelled to address the fact that, given the record before us, we cannot conclude that the police obtained a search warrant prior to executing their search of Wiggins's residence. The uncontroverted testimony of the police was that their search began at 7:17 a.m. N.T., 4/26/12, at 40. The Commonwealth offered a copy of the warrant in question into evidence at the suppression hearing. This exhibit contains a space for the magistrate to enter the time he authorized the warrant; in that space, it states the warrant was signed at 7:00 a.m. The warrant was delivered by fax to the police, and there is a time stamp at the top of the exhibit that indicates the fax was received at 7:48 a.m. The police were unable to account for the fact that the fax appears to have arrived after the search commenced, speculating (without foundation) that perhaps the fax machine malfunctioned. ***Id.*** at 98. In addition, Appellee Wiggins introduced testimony and evidence that the copy of the warrant left by the police at the residence was not signed by the magistrate. The suppression court declined

to make a finding as to what time the fax was received, and whether the fax was received prior to the commencement of the search.[2]

Compounding this ambiguity is the fact that one of the officers testified that he was in the apartment prior to the warrant being issued "for a sweep when we originally made contact with one of the residents that lived in the apartment." *Id.* at 115 – 116. It would appear that the officer believed he was referring to a so-called "protective sweep" as discussed by the United States Supreme Court in *Maryland v. Buie*, 110 S.Ct. 1093 (1990). Despite this officer's attempt to distinguish a "sweep" from a "search," no such distinction actually exists, and the Supreme Court unambiguously described such an entry as a "search." *Id.* at 1094. As such, the Commonwealth's own evidence suggests that a search commenced prior to the issuance of the warrant.

It is axiomatic that

as a general rule, "a search warrant is required before police may conduct any search." []*Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896, 900 (Pa.1995)[]. Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable. *Id.* (citing *Horton v. California*, [] [496] U.S. 128, 134 n. 4 [110 S.Ct. 2301, 110 L.Ed.2d 112] (1990)). This is the law under both the Fourth

---

[2] The court stated that this claim, raised by Appellee Wiggins, "though plausible in light of all the obvious discrepancies with the warrant, was unverifiable." TCO at 29. However, as noted *infra*, it was the Commonwealth's burden of proof at the suppression hearing to show that the evidence was not obtained in violation of Appellee Wiggins's rights. *Williams*, 73 A.3d at 614

Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. ***Id.*** (citing ***Commonwealth v. McCree***, 592 Pa. 238, 924 A.2d 621, 627 (Pa.2007)); ***see Commonwealth v. Jones***, 605 Pa. 188, 988 A.2d 649, 656 (Pa.2010).

***Williams***, 73 A.3d at 614. Moreover, where a defendant files a motion seeking to suppress evidence, the burden of proof rests with the Commonwealth to go "forward with the evidence and … establish[] that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(h). As such, we cannot conclude that the record before us establishes that the police obtained a warrant before they conducted a search of Appellee Wiggins's residence. We therefore affirm the trial court's order granting suppression of the evidence seized from that residence on this basis.

In addition, we would not agree with the Commonwealth's claim that the evidence should have been admitted despite the numerous violations of the Rules of Criminal Procedure that occurred while the warrant was being obtained and executed. We would conclude that suppression was proper, as Appellee Wiggins was demonstrably prejudiced by the Commonwealth's failure to adhere to the Rules of Criminal Procedure.

At the suppression hearing, Wiggins introduced the testimony of his girlfriend, who also lived at the residence that was searched. She testified that when she returned home after the search, she found a copy of the warrant left behind by the police. N.T., 4/26/12, at 125. The warrant she described was then admitted into evidence. The section of that copy that

was to be filled out (and signed) by the magistrate was entirely blank. The detective who had left the copy of the warrant at the premises could not recall whether the copy he left had been signed by the judge, and admitted it was possible that it had not been signed. *Id.* at 45, 58. As such, the record before us does not establish that the police complied with Pa.R.Crim.P. 208, which states in applicable part:

> (A) A law enforcement officer, upon taking property pursuant to a search warrant, shall leave with the person from whom or from whose premises the property was taken a copy of the warrant and affidavit(s) in support thereof, and a receipt for the property seized. A copy of the warrant and affidavit(s) must be left whether or not any property is seized.
>
> (B) If no one is present on the premises when the warrant is executed, the officer shall leave the documents specified in paragraph (A) at a conspicuous location in the said premises. A copy of the warrant and affidavit(s) must be left whether or not any property is seized.

In addition, it was undisputed at the suppression hearing that no visual communication occurred between the magistrate and the police officer when the warrant was issued; rather, the affidavit of probable cause was faxed to the judge, who faxed the warrant back to the officer, and the two communicated about the warrant by phone. This is a clear violation of Pa.R.Crim.P. 203, which states in applicable part:

> (A) In the discretion of the issuing authority, advanced communication technology may be used to submit a search warrant application and affidavit(s) and to issue a search warrant.
>
> …

(C) Immediately prior to submitting a search warrant application and affidavit to an issuing authority using advanced communication technology, the affiant must personally communicate with the issuing authority by any device which, at a minimum, allows for simultaneous audio-visual communication. During the communication, the issuing authority shall verify the identity of the affiant, and orally administer an oath to the affiant.

Finally, Pa.R.Crim.P. 210 states: "The judicial officer to whom the warrant was returned shall file the search warrant, all supporting affidavits, and the inventory with the clerk of the court of common pleas of the judicial district in which the property was seized." In the instant case, it was uncontroverted at the suppression hearing that these documents were never filed with the Clerk of Courts of Montgomery County, in violation of the rule. We further note that Appellee Wiggins argued at the suppression hearing that the warrant was not returned by the police to the magistrate. The court agreed, and found this had not been done. N.T., 8/8/13, at 3. Such a lapse would constitute a violation of Pa.R.Crim.P. 209(a), which states, "The law enforcement officer executing the search warrant shall return the search warrant promptly after the search is completed, along with any inventory required under paragraph (C), to the issuing authority."

The Pennsylvania Supreme Court has held that suppression "is not an appropriate remedy for every violation of the Pennsylvania Rules of Criminal Procedure concerning searches and seizures. It is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad-faith or has substantially prejudiced the defendant that exclusion *may* be an

appropriate remedy." ***Commonwealth v. Mason***, 490 A.2d 421, 426 (Pa. 1985) (emphasis in original). Notwithstanding the Commonwealth's argument that the violations in question are harmless "technical" violations, it is clear that Appellee Wiggins was substantially prejudiced. The papers left by the police at his residence were never signed by the judge.[3] The warrant was never returned to the judge or filed with the clerk of courts. It is clear that the multiple violations of the Rules of Criminal Procedure made it impossible for Appellee Wiggins to determine whether the police obtained a warrant before searching his home. As such, we would conclude that the trial court did not err in finding that suppression was proper on this basis, as well.

Order affirmed.

Judge Gantman concurs in the result.

Judge Platt files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/2014

_____

[3] The Pennsylvania Supreme Court has concluded "no warrant, in fact, exists" where a warrant is not signed by an issuing authority. ***Commonwealth v. Chandler***, 477 A.2d 851, 857 (Pa. 1984).