**[J-5-2024] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 20 EAP 2023 |
| | : | |
| Appellee | : | Appeal from The Judgment of |
| | : | Superior Court entered on |
| | : | 12/13/2022 at No. 2192 EDA 2021 |
| v. | : | affirming the Judgment of Sentence |
| | : | entered on 9/28/2021 in the Court of |
| | : | Common Pleas, Philadelphia |
| OMAR SAUNDERS, | : | County, Criminal Division at No. CP- |
| | : | 51-CR-0000208-2021. |
| Appellant | : | |
| | : | ARGUED: March 5, 2024 |

**DISSENTING OPINION**

**JUSTICE DONOHUE**                                    **DECIDED: November 20, 2024**

The Majority incorrectly relies on a non-precedential decision in *Commonwealth v. McCree,* 924 A.2d 621 (Pa. 2007) (plurality), to hold that, following *Commonwealth v. Alexander*, 243 A.3d 177 (2020), police are permitted to conduct a warrantless seizure from a vehicle when they observe contraband in plain view therein pursuant to the so-called limited automobile exception.[1]  Justices participating in the *McCree* decision rejected the notion that any consensus on the concept of a limited automobile exception had been achieved in that case when they decided *Commonwealth v. Hernandez*, 935 A.2d 1275 (Pa 2007), just six months later.  Furthermore, the limited automobile exception cannot survive *Alexander* in any event and, under the facts of this case, it is clear that the police seized contraband in plain view from the defendant's vehicle without proving a

---

[1]  We granted review to answer whether this Court's holding in *Alexander* requires "a fact specific assessment to determine whether exigency exists to provide officers with a right of access to the interior of an automobile under the plain view exception to the warrant requirement?" *Commonwealth v. Saunders*, 301 A.3d 865 (Pa. 2023) (per curiam).

cognizable exigency that would excuse their failure to obtain a warrant. Consequently, I would reverse the Superior Court's decision applying the limited automobile exception and reverse the trial court's denial of suppression of the seized firearm. Thus, I respectfully dissent.

## Background

Both Article I, § 8 of the Pennsylvania Constitution ("Section 8")[2] and the Fourth Amendment to the United States Constitution[3] ("Fourth Amendment") require that police obtain a warrant to conduct a search or seizure in the absence of a handful of exceptions.[4] Pertinent here is the category of exceptions under which "a warrantless search is allowed when there is **compelling need** for official action and **no time** to secure a warrant." *Mitchell v. Wisconsin*, 588 U.S. 840, 849 (2019) (internal citations omitted) (emphasis

---

[2] Article I, Section 8 of the Pennsylvania Constitution states:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. CONST. art. I, § 8.

[3] The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

[4] "It is well-established that, in the absence of a warrant or a recognized exception to the warrant requirement, a search or seizure is presumptively unreasonable." *Commonwealth v. Romero*, 183 A.3d 364, 396 (Pa. 2018).

added).  An exigency exception most often arises in emergencies, such as when police are engaged in pursuit of a fleeing felon, or when they need to take immediate action to prevent the destruction of evidence or alleviate a potential danger to police or others.  *See Commonwealth v. Roland*, 637 A.2d 269, 270-71 (Pa. 1994).  This court refrains from establishing "a definition of exigency that will apply to all scenarios" under Section 8, because identifying a warrant-excusing exigency is a fact-based consideration that "is not amenable to per se rules[.]"  *Alexander*, 243 A.3d at 208.  And while exceptions exist, "[o]btaining a warrant is the default rule."  *Id*.

Beginning with *Carroll v. United States*, 267 U.S. 132 (1925), the Supreme Court of the United States inverted this default rule for vehicle searches for purposes of the Fourth Amendment.  Under the federal automobile exception, warrantless searches of vehicles are permissible based on the presence of probable cause alone.[5]  Despite decades of resisting outright adoption of the federal automobile exception, this Court briefly tarnished Section 8 in an anomalous plurality decision in *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014) (Opinion Announcing the Judgment of the Court, "OAJC"), which announced that Section 8 provides "no greater protection than the Fourth Amendment" for vehicle searches, thereby adopting the federal automobile exception.  *Gary*, 91 A.3d at 104.  The lesser standard under the Fourth Amendment was justified on two pillars, the first grounded in an inherent exigency due to the mobility of a vehicle, and the second grounded in a philosophical assumption about privacy.  *See South Dakota v. Opperman*, 428 U.S. 364, 367 (1976) ("[T]he inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant

---

[5]  *See Chambers v. Maroney*, 399 U.S. 42, 48 (1970) (observing that, in *Carroll*, the Supreme Court of the United States "held that automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize").

requirement is impossible."); *id.* ("Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office.").

In *Alexander*, we held that Section 8 "affords greater protection to our citizens than the Fourth Amendment" by requiring "both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile." *Alexander*, 243 A.3d at 181. In doing so, we rejected the diminished expectation of privacy rationale that animated the federal automobile exception. *Id.* at 204 (stating that Section 8 "requires that we ask whether the violation of privacy interests inherent in allowing widespread warrantless searches is compatible with the Pennsylvania Constitution. We think it is not … [d]ue to the rich history of our charter protecting privacy"). In reaching this conclusion, *Alexander* adopted then-Justice Todd's robust *Edmunds*[6] analysis in her dissent in *Gary*. *Id.* at 202. That analysis found that citizens possess an "objectively reasonable expectation of privacy" in their vehicles in modern society, as the "automobile functions as a veritable storehouse of their intimate personal possessions, i.e., their 'home away from home.'" *Gary*, 91 A.3d at 152 (Todd, J., dissenting). Justice Todd also found further support for this view in the text of Section 8, observing that "the personal items stored or transported in an automobile constitute the very type of private 'papers and possessions' which are secured against unlawful search and seizure by" Section 8. *Id.*

---

[6] *Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991). We apply an *Edmunds* analysis when considering whether a provision of the Pennsylvania Constitution provides greater protection than that provided by the United States Constitution. Under *Edmunds*, we consider: "1) [the] text of the Pennsylvania constitutional provision; 2) [the] history of the provision, including Pennsylvania case-law; 3) related case-law from other states; [and] 4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence." *Alexander*, 243 A.3d at 188 (quoting *Edmunds*, 586 A.2d at 895).

Our decision in *Alexander* reset our Section 8 jurisprudence to its pre-*Gary* status. However, what predominated the pre-*Gary* era was far more conflict than consensus. Prior to *Gary*, members of this Court attempted with little success to define a "limited automobile exception" under Section 8. *Alexander*, 243 A.3d at 188.

In overruling *Gary* in *Alexander*, we rejected the federal automobile exception because it permitted warrantless searches "even in scenarios where it is beyond question that police officers could have sought a warrant before the vehicle is searched." *Id.* at 204. That is, we rejected the Fourth Amendment model because it assumes a warrant-excusing exigency by default in all vehicle searches, even when those exigencies are not present in a particular case. By contrast, Section 8 demands a warrant unless police show they possess "both probable cause and exigent circumstances," more closely aligning our jurisprudence governing vehicle searches with home searches. *Id*. at 207. While *Alexander*'s mandate was clear in this regard, its mandate "to return to the pre-*Gary* application of our limited automobile exception" left many questions unanswered. *Id*. *Alexander* did not explicitly endorse the limited automobile exception, but its mention has proven to be confusing to the bar, as is demonstrated by the parties' arguments in this case, because the limited automobile exception—as it is applied by the lower courts today—is directly at odds with *Alexander*'s core holding.

### Limited Automobile Exception

In the wake of *Alexander*, the Superior Court has relied on the limited automobile exception to avoid *Alexander*'s mandate in vehicle searches precipitated by discovery of contraband in plain view.[7] This largely stems from the pre-*Alexander* Superior Court

---

[7] *See Commonwealth v. McMahon*, 280 A.3d 1069, 1074 (Pa. Super. 2022) (holding that when contraband is observed in plain view in a vehicle from a lawful vantage-point, the lack of advance notice and opportunity to obtain a warrant—the limited automobile exception—provides the officers with a lawful right of access to seize the object in (continued…)

decision in *Brown*, which defined the limited automobile exception, as now applied in the Superior Court, by stitching together a purported majority holding from the various opinions in *McCree,* an approach adopted by the Majority today. *See* Majority Op. at 16-18. This creates a de facto, categorical exception to the warrant requirement at odds with *Alexander*'s core holding that requires a case-by-case, totality-of-the-circumstances analysis of whether an exigency exists to permit a warrantless search once probable cause is established. I think it is time for this Court to put the obsolete and confusing limited automobile exception to rest.

As discussed below, the limited automobile exception has been defined in a variety of ways over the years, lending itself to inconsistent application. In its most expansive form, it would appear to apply in nearly every police-citizen interaction involving a vehicle search where probable cause did not develop long before the warrantless search, such as in this case, where probable cause to search first arose upon the discovery of contraband in plain view during a traffic stop. In other incarnations, that definition is substantially narrowed by consideration of whether, despite the sudden appearance of probable cause during a traffic stop, it was still reasonably practical for police to obtain a warrant before conducting the search. To understand what it is and how to define it, and

_____

question) (applying *Commonwealth v. Brown*, 23 A.3d 544, 557 (Pa. Super. 2011) (en banc)); *Commonwealth v. Smith*, 285 A.3d 328, 334 (Pa. Super. 2022) (holding that because the police officer "lacked advance notice and an opportunity to obtain a warrant before commencing [the] search, he had a lawful right of access to the interior of Appellee's vehicle to recover the evidence"); *Commonwealth v. Davis*, 287 A.3d 467, 473 (Pa. Super. 2022) (applying *McMahon* and *Smith* in rejecting a claim that "*Alexander* requires the Commonwealth to prove exigent circumstances where the officers have lawfully seized an object under the plain view doctrine").

The decision under review applied *McMahon* in concluding that the warrantless intrusion into Saunders' vehicle to seize a firearm in plain view was lawful. *Commonwealth v. Saunders*, 290 A.3d 676 (Pa. Super. 2022) (unpublished memorandum).

before its viability post-*Alexander* can be considered, it is imperative to understand its contentious origins.

This Court consistently rejected adoption of the full federal automobile exception prior to *Gary*, but it nonetheless found it difficult to precisely define the distinction between Section 8 and the Fourth Amendment in that regard. Out of that chaos emerged various manifestations of the limited automobile exception. Although not subsumed within her *Edmunds* analysis, Justice Todd explained in her *Gary* dissent that she agreed with the plurality in *Gary* that, before *Gary* was decided, the inherent mobility of a vehicle was never alone a sufficient exigency to justify a warrantless search in Pennsylvania. *Id.* at 140 (citing, inter alia, *Commonwealth v. Cockfield*, 246 A.2d 381 (Pa. 1968)). In *Cockfield*, this Court stated:

> Although it [s]ometimes may be reasonable to search a movable vehicle without a warrant, the movability of the area to be searched is not alone a sufficiently 'exigent circumstance' to justify a warrantless search. Other circumstances, for instance **a serious possibility that the movable vehicle may, in fact, be moved before a warrant can be obtained**, are necessary.

*Id.* at 384 (emphasis added). Thus, *Cockfield* contemplated an exigency concerning the possibility that a vehicle might escape the reach of police unless a search was conducted immediately. Under that framework, there must be some "serious possibility" that the vehicle might be moved, language leaving no room for mere speculation or conjecture about improbable risks that the vehicle would escape before police can secure a warrant. That is, the mere fact that a vehicle could be moved in the abstract was not enough to prove an exigent circumstance under Section 8.

In *Commonwealth v. Baker*, 541 A.2d 1381 (Pa. 1988), the exigency question was more broadly framed. *Baker* stated that "certain exigencies may render **the obtaining of a warrant not reasonably practicable** under the circumstances of a given case, and,

when that occurs, vehicle searches conducted without warrants have been deemed proper where probable cause was present." *Id.* at 1383 (emphasis added). *Baker*'s framing of the rule clearly captured the *Cockfield* rule, but also contemplated that exigencies might arise during vehicle stops beyond the vehicle moving while police sought a warrant. The facts of *Baker* were one such instance. In that case, police developed probable cause in rapidly evolving circumstances. They received a tip that Baker committed an assault with a gun, and police began pursuing his vehicle. When approached, "he suddenly exited from his vehicle, after turning off the ignition, and began walking in circles and verbally abusing police in a loud manner." *Id.* at 1382. At that point, the *Baker* Court determined, probable cause had crystalized to believe a gun was in the vehicle, but Baker was still circling his vehicle in an irritated state. While attempting to calm him down, and before physically detaining him, police reached into his vehicle and secured two weapons. In explaining why exigent circumstances justified the warrantless search of the vehicle, the unanimous *Baker* Court stated:

> This is not a case where police knew hours in advance that a particular vehicle carrying evidence of crime would be parked in a particular locale, such that it would have been reasonably practicable to obtain a search warrant before encountering the vehicle to be searched. Rather, the instant search was conducted when police stopped a moving vehicle just thirty minutes after a reported crime. Inasmuch as the requirement of probable cause was satisfied, the exigencies of the mobility of the vehicle and of there having been inadequate time and opportunity to obtain a warrant rendered the search proper.

*Id.* at 1383. This subsidiary rationale, explaining why obtaining a warrant was not reasonably practical, began to take on a life of its own in subsequent decisions.

Soon after *Baker*, this Court decided *Commonwealth v. Rodriguez*, 585 A.2d 988 (Pa. 1991). In that case, over the course of two weeks, police repeatedly received information from reliable informants that Rodriguez and her husband would be travelling from New York to Pennsylvania with cocaine in one of several vehicles the pair were

known to use.  Police stopped them after they left a location where a sale had likely occurred and immediately searched the vehicle without a warrant.  Relying on *Baker's* secondary rationale regarding the prior knowledge of the specifics of the vehicle's make and location and the fact that police were told that the couple intended to rapidly distribute the cocaine upon their arrival, the *Rodriguez* Court distinguished *Baker* on the facts in holding that the search was proper.[8]

In *Commonwealth v. White*, 669 A.2d 896 (Pa. 1995), a majority of this Court stated that

> police may search a vehicle without a warrant where: (1) there is probable cause to believe that an automobile contains evidence of criminal activity; (2) unless the car is searched or impounded, the occupants of the automobile are likely to drive away and contents of the automobile may never again be located by police; **and** (3) police have obtained this information in such a way that they could not have secured a warrant for the search, i.e., there are exigent circumstances.

*Id.* at 900 (emphasis added).  This Court found the warrantless search of White's vehicle to be unlawful because police had probable cause to search it long before the warrantless search occurred.  Police had earlier secured a warrant to search both White's residence and person yet failed to obtain one for his vehicle despite having information that White planned to transport the drugs in it.  As both then-Justice Todd and the plurality in *Gary* agreed, "*White* marked a clear break with the United States Supreme Court's caselaw in this area, which, by 1995, had abandoned the requirement that exigent circumstances must exist to excuse the failure to obtain a warrant prior to an automobile search." *Gary*, 91 A.3d at 141 (Todd, J., dissenting).

---

[8]  Notably, neither Rodriguez nor her husband was placed under arrest until after the search was conducted.  *Rodriguez*, 585 A.2d at 989.  In determining whether police could have obtained a warrant, the Court's focus in *Rodriguez* was solely on what had occurred before the stop.  It is unclear whether Rodriguez ever advanced the argument that police could have obtained a warrant after the stop occurred.

In *Commonwealth v. Luv*, 735 A.2d 87 (Pa. 1999), the police had already secured a warrant to search Luv's home based on his sale of narcotics from that location to an informant and were waiting for him to bring additional drugs back to that location before they executed the search warrant. As they waited, they learned that Luv had changed his plans and had decided to take the drugs to a nightclub for distribution. Although police initially intended to obtain a warrant for his car, the situation changed when they learned that Luv was on his way to the nightclub. Police stopped Luv's car and searched it without a warrant. The *Luv* Court cited *Baker* for the applicable standard, stating that "certain exigencies may render the **obtaining of a warrant not reasonably practicable** under [certain] circumstances, [justifying some] vehicle searches conducted without warrants ... where probable cause was present." *Luv*, 735 A.2d at 93 (quoting *Baker*, 541 A.2d at 1383) (emphasis added). Justifying the warrantless search on exigency grounds, the *Luv* Court reasoned:

> The police had two choices: either stop the vehicle and search it without a warrant, or allow Luv to continue on his way, possibly resulting in the disappearance of the evidence, and in the introduction of a substantial amount of drugs to their community. There was no time to secure a new warrant. These are the exigent circumstances that justify the warrantless search of Luv's vehicle.

Luv, 735 A.2d at 94.[9]

The *Luv* Court also distinguished *White* on the grounds that the police had initially believed Luv would be in possession of the drugs at his residence for distribution, a circumstance that changed rapidly after they had already secured a warrant for the home. *Id.* Justice Castille concurred in *Luv*, expressing his belief that Pennsylvania should adopt

---

[9] But common sense tells us that was a false dichotomy. Police also could have stopped Luv's vehicle and secured him while they obtained a warrant to search his vehicle. As was the case in *Rodriguez*, there is no indication in *Luv* that the Court had ever considered this third option.

the federal automobile exception wholesale, a position he previously articulated in his dissent in *White*. *Id.* at 95 (Castille, J., concurring); *see also White*, 669 A.2d at 909 (Castille, J., dissenting) (stating "that the automobile exception to the warrant requirements of this Commonwealth should be a per se rule regardless of how much time police may have to obtain a warrant").

Justice Castille's position started to gain additional supporters following *Luv*. Three years later, in *Commonwealth v. Perry*, 798 A.2d 697 (Pa. 2002), a plurality of this Court affirmed the denial of suppression where there was a warrantless search of an automobile for firearms despite that the occupants had already been taken into custody. But *Perry* produced four separate opinions on a six-member court. The lead opinion, authored by Justice Cappy, was not joined by any other justices. In his view, the search was justified by officer and public safety concerns, because if the defendants' vehicle was not immediately searched, police would have had to "organize an immediate search of the entire route that the defendant had traveled while fleeing through the city to recover the weapons." *Id.* at 702 (Cappy, J., OAJC). Additionally, he believed it was "of critical import" that the targeted vehicle "was in the middle of a lane of traffic with its engine running" when the search was conducted. *Id.* at 703.

Justice Castille concurred in the result because he would have reached the same disposition applying the federal automobile exception. He described the limited automobile exception that he rejected as permitting a warrantless search when police did not have the opportunity "to secure a search warrant before probable cause to search the vehicle arose unexpectedly[.]" *Id.* at 706 (Castille, J., concurring). He was joined by Justice Newman.

Justice Saylor wrote a separate concurrence, agreeing with Justice Cappy that this Court must apply a fact-specific analysis of exigency. *Id.* at 719 (Saylor, J., concurring).

He rejected Justice Castille's framing of the limited automobile exception as being defined "solely in terms related to the development of probable cause." *Id*. Instead, he identified the relevant exception to the warrant requirement under Section 8 as arising only when it is "not reasonably practicable for the police to obtain a warrant." *Id*. (citing *Baker*). He noted that this framing of the exception made sense because it was more closely tied to the origins of the federal automobile exception long before it became a per se rule. *Id*. at 720 n.3 (citing *Carroll*). Justice Saylor then concluded that the limited automobile exception was satisfied on those terms based on the safety rationale set forth in Justice Cappy's OAJC.

Justice Nigro, joined by then-Chief Justice Zappala, would have found the search unconstitutional. He seemed to accept Justice Saylor's framing of the limited automobile exception as turning on a fact-specific analysis of whether it was practicable to obtain a warrant under the circumstances, but rejected that the standard was met given, inter alia, that the defendants had already been arrested when the vehicle was searched. *Id*. at 722 (Nigro, J., dissenting).[10]

Five years later, in *McCree*, this Court again failed to come to an official consensus on the meaning and/or applicability of the limited automobile exception. *McCree* is nonetheless important because, although a plurality ruling like *Perry*, it was the last decision by this Court concerning the limited automobile exception before *Gary*. According to the Superior Court in *Brown*, *McCree* established how the limited automobile exception applied in Pennsylvania just before *Gary* was decided. *See Brown*, 23 A.3d at 557. The Majority regrettably follows suit today. Majority Op. at 25 (holding "we are

---

[10] He also rejected the importance of the status of the car as running and in a traffic lane, suggesting that a limited intrusion to turn off the car may have been justified, but that the search for weapons was not. *Perry*, 798 A.2d at 723 (Nigro, J., dissenting). Even if police had to move the car, he rejected the OAJC's rationale that the presence of the firearm inside the car was a significant risk to police. *Id*.

bound by the common holding of a majority of this Court in *McCree* that the unexpected development of probable cause establishes a lawful right of access to seize an item in a car under the third prong of the plain view doctrine").

In *McCree*, a plain view case, an undercover police officer convinced a man named Boyer to purchase drugs for him. The disguised officer gave him money and Boyer returned with several pills. The officer subsequently gave more money to Boyer and followed him, observing that Boyer appeared to be purchasing more pills from inside McCree's vehicle. When police approached the vehicle, McCree shoved a pill bottle beneath his seat. After McCree voluntarily exited the vehicle, police reached in and seized the pill bottle and two additional pill bottles found in the driver's door pocket. *McCree*, 924 A.2d at 623-24.

This Court remained divided into several factions when addressing the seizure in *McCree*. Justice Eakin wrote the lead plurality opinion, joined by Justices Saylor and Fitzgerald. He first recognized that under the plain view doctrine, police may seize an item in plain view without a warrant if (1) they observe the contraband from a lawful vantage-point; (2) the incriminating character of the object is immediately apparent; and (3) the police have a lawful right of access to the object. *Id.* at 625 (Eakin, J., OAJC).[11] After resolving confusion over application of the plain view doctrine, Justice Eakin then considered whether an exception to the warrant requirement applied to satisfy the lawful access prong.

---

[11] At the time *McCree* was decided, the lower courts had begun to disregard the third element of the plain view test. *McCree* reaffirmed the importance of the lawful access prong, noting that it required proof of an independent exception to the warrant requirement and, as such, calling the plain view doctrine an exception to the warrant requirement was somewhat of a misnomer, because observing an object in plain view did not give police the lawful authority to access the space in which it was observed. *See McCree*, 924 A.2d at 627 (applying *Horton v. California*, 496 U.S. 128 (1990)). This aspect of the *McCree* decision was unanimous. *See McCree*, 924 A.2d at 632 (Cappy, C.J., concurring); 634 (Castille, J., concurring).

Justice Eakin maintained that a "limited automobile exception" applied in Pennsylvania because of 1) the inherent mobility of a vehicle, and 2) a diminished expectation of privacy in the vehicle. *Id.* at 630 (Eakin, J., OAJC). In other words, he cited the justifications for the federal automobile exception. Within that framework, he stated:

> We have allowed warrantless seizures "where police do not have advance knowledge that 'a particular vehicle carrying evidence of crime would be parked in a particular locale, ... the exigencies of the mobility of the vehicle and of there having been inadequate time and opportunity to obtain a warrant rendered the search [without a warrant] proper.' " *Commonwealth v. Rodriguez*, 585 A.2d 988, 991 (Pa. 1991) (citing *Baker*, [541 A.2d] at 1383).

*Id.*

Justice Eakin determined that the pill bottles were lawfully seized, believing that probable cause arose suddenly when police observed McCree hiding the first bottle. The limited automobile exception applied, he wrote, because the officer had "no advanced warning that appellant or his Pontiac would be the target of a police investigation." *Id.* at 631. He provided no explanation of why there was inadequate time and opportunity to obtain a warrant, despite having recited that standard. However, I note the OAJC in *McCree* gives the impression that McCree voluntarily stepped out of the vehicle and had not yet been arrested when the seizure occurred. *Id.* at 624. Additionally, Boyer was still in the passenger seat. *Id.* at 632 (Cappy, C. J., concurring).

Then-Chief Justice Cappy concurred, disagreeing with the OAJC's treatment of the limited automobile exception as having satisfied the third prong of the plain view test. He stated that the limited automobile exception remained in flux due to disagreements on the Court, and he noted the OAJC's failure to acknowledge or discuss the controversy. *Id.* at 633-34. Chief Justice Cappy found that it was unnecessary to invoke the limited automobile exception, instead concluding that the pill bottles had been seized pursuant

to the search-incident-to-arrest exception to the warrant requirement. Under that rubric, he determined that McCree was under arrest when he was removed from the vehicle, allowing police to search the area within McCree's immediate control, which is where the pill bottles were found. Justices Baer and Baldwin joined Chief Justice Cappy's concurrence.

Justice Castille, champion of the federal automobile exception, also concurred. Writing only for himself, he reiterated his belief that Section 8 "should be coextensive with" the Fourth Amendment and should therefore recognize the federal automobile exception. *Id.* at 635 (Castille, J., concurring). However, in an alternative analysis, he argued that the circumstances in *McCree* justified a warrantless search under the limited automobile exception, which he defined as probable cause arising unexpectedly, "in circumstances that prevented police from securing a warrant before probable cause to search the vehicle arose." *Id.* (citation omitted). Applying that standard, he opined:

> In this case, probable cause respecting the vehicle did arise unexpectedly as police were engaged in an investigation of an unfolding retail illegal drug operation. Moreover, in such circumstances, it was not reasonably practicable to expect police to secure a warrant prior to searching the vehicle. And, moreover, there is no reason to believe that police manipulated the circumstances in order to subvert the warrant requirement.

*Id.*

This Court only meaningfully addressed *McCree* once before *Gary* was decided, in *Commonwealth v. Hernandez*, 935 A.2d 1275 (Pa 2007).[12] *Hernandez* was a vehicle search case. It cited *McCree* for the proposition that under Section 8, a warrantless

---

[12] McCree was cited two other times, in *Commonwealth v. Chase*, 960 A.2d at 108 (Pa. 2008), and *Commonwealth v. Jones*, 988 A.2d 649 (Pa. 2010). In *Chase*, we cited *McCree* solely for the proposition that there is a lesser expectation of privacy in vehicles, a position that cannot survive *Alexander*. *Jones* did not involve a vehicle search, and only cited *McCree* for its definition of the plain view doctrine.

vehicle search requires both probable cause and exigency, where the exigency must involve more than a vehicle's mobility. *Hernandez*, 935 A.2d at 1280. *Hernandez* then proceeded to determine whether "the possibility of danger can rise to the level of exigent circumstances in the context of a vehicle search[.]" *Id.* at 1281. As to the limited automobile exception, the *Hernandez* Court stated only that while "the discussion regarding the requirements for warrantless vehicle searches in *McCree* was not necessarily crucial to the resolution of the matter, the various expressions in that case illustrate the differing, current viewpoints held by members of this Court." *Id.* at 1281 n.1. In other words, *Hernandez* did not observe an obvious consensus that could be cobbled together from the various opinions in *McCree* regarding the limited automobile exception beyond the requirement that Section 8 requires both probable cause and an exigency beyond the mobility of a vehicle.

In that regard, the importance of *Hernandez* was two-fold. First, it established that a potential danger to police can establish a warrant-excusing exigency. *Id.* at 1282 ("We hold today, without equivocation, that where there is potential danger to police or others in the context of a vehicle stop, exigency has been established for purposes of a warrantless search."). Second, *Hernandez* held that whether a potential danger to police exists is a fact-specific inquiry that is not satisfied by a mere claim of danger. *Id.* ("The fact that potential for danger to police or the public is enough to constitute exigent circumstances does not mean that a mere assertion of danger is sufficient. Rather, **police must be able to articulate the danger** posed under the specific circumstances of the case.") (emphasis added). Applying that standard, the *Hernandez* Court sustained the suppression order in that case because the officer who conducted the search had invoked the notion of safety to justify his failure to obtain a warrant, but he did not "attempt to explain why he was concerned for his safety." *Id.*

Although *Hernandez* did not find a consensus in *McCree* as to the limited automobile exception, the Superior Court endeavored to find one in *Brown*, a decision I authored. This Court has only cited *Brown* one time—in *Alexander*—and only for the proposition that this Court had consistently rejected the federal automobile exception in favor of a limited automobile exception. In *Brown*, the defendant robbed two individuals at an ATM machine and then fled in a minivan. Police pulled the minivan over and tried to maintain the status quo as other officers interviewed the victims at the scene of the crime. Once it was clear that Brown matched the victims' description of the perpetrator, the police decided to arrest him. While they attempted to effectuate the arrest, Brown pulled away and fled. He was quickly detained nearby. Police observed what turned out to be a toy gun in plain view in the minivan, entered the vehicle to seize the gun and, in the process, discovered additional evidence implicating Brown in the robbery. *See Brown*, 23 A.3d at 547-48.

The Superior Court in *Brown* was forced to decide the contours of the limited automobile exception as the Commonwealth did not suggest a safety concern existed to justify the warrantless search of Brown's minivan. Instead, the Commonwealth advanced the notion that *McCree* created a de facto majority decision on the limited automobile exception by reading together *McCree*'s OAJC with Justice Castille's concurrence. *Id.* at 551. The *Brown* court agreed, although it acknowledged that the OAJC in *McCree* did not hold precedential value. *Id.* at 556. The *Brown* court also acknowledged that Justice Castille's concurrence in *McCree* did not contain any language expressly agreeing with the OAJC. *Id.* Nonetheless, the court looked to "the substance of the concurrence to determine the extent to which it provides precedential value to points of agreement." *Id.* Conducting that analysis, the *Brown* court concluded:

> Justice Castille's concurrence in *McCree* narrowly inures the
> plurality's OAJC with precedential value regarding automobile
> searches and seizures in the following limited respect: where

> police officers observe incriminating-looking contraband in plain view in a vehicle from a lawful vantage-point, **the lack of advance notice and opportunity to obtain a warrant** provides the officers with a lawful right of access to seize the object in question.

*Id.* at 557 (emphasis added).

In my view, in hindsight, the opinion of the *en banc* Superior Court panel in *Brown* on the limited automobile exception was wrong but, regardless, even if it was correct at the time, it did not survive *Alexander*. The Majority today repeats and aggravates the error of *Brown*. Justice Castille's concurrence in *McCree* was first and foremost a reiteration of his belief that the federal automobile exception should have applied, under which there is no consideration of whether an actual exigency existed to excuse the warrant requirement, including the ostensible exigency involving the sudden development of probable cause. Moreover, in beginning his concurrence, Justice Castille specifically rejected the "status and contours" of the limited automobile exception as defined by the OAJC, and only concurred in the result. *Id.* at 634. I believe today that the *Brown* Court should not have read any further into Justice Castille's opinion, and nor should this Court today.

Only in his alternative analysis in *McCree*—i.e., the dicta contained within a concurrence to a plurality opinion—did Justice Castille attempt to state a definition for the limited automobile exception (that he did not believe even existed), and his application of that standard was internally inconsistent. On one hand, he stated that the standard was that the limited automobile exception applied when police were prevented from securing a warrant **before probable cause arose** unexpectedly, but in applying the standard in his dicta, he later stated that it applied because it was not practical for police to get a

warrant **before the search occurred**. *See McCree*, 924 A.2d at 635 (Castille, J., concurring).[13] These statements do not articulate the same standard.

The Majority applies the *Marks* rule to reconcile these disjointed dicta with the OAJC in *McCree*. Majority Op. at 16-18 (applying *Marks v. United States*, 430 U.S. 188 (1977)). As the Majority correctly observes, where fragmented decisions decide a case and "no single rationale" can explain the ruling, the holding "**may** be viewed as that position taken by those Members who concurred in the judgment[] on the narrowest grounds." *Id.* (quoting *Marks*, 430 U.S. at 193) (emphasis added). The Majority also is correct that "a majority of the Court must be in agreement on the concept which is to be deemed the holding." *Id.* at 16-17 (quoting *In re Avery*, 286 A.3d 1217, 1228 (Pa. 2022) (quoting *Pap's A.M. v. City of Erie*, 719 A.2d 273, 278 (Pa. 1998), *rev'd*, 529 U.S. 277 (2000)). However, "[t]he mere finding that one Justice expressed a narrower belief than others does not dispense with the requirement that a majority of the Court need agree on a concept before that concept can be treated as binding precedent." *Pap's A.M.*, 719 A.2d at 278.

There was no "agreement on a concept" in *McCree* to be discerned from the OAJC and Justice Castille's concurrence. The Majority gives too little credence to a majority of the Court's nearly contemporaneous statements in *Hernandez* that *McCree* had not provided a consensus understanding of the limited automobile exception. *See Hernandez*, 935 A.2d at 1281 ("While the discussion regarding the requirements for warrantless vehicle searches in *McCree* was not necessarily crucial to the resolution of the matter, the various expressions in that case illustrate the differing, current viewpoints held by members of this Court.") Even Justice Castille, whose dicta in his concurrence

---

[13] The *Brown* decision did not explain which version of the standard it was adopting, stating only that "the lack of advance notice and opportunity to obtain a warrant provides the officers with a lawful right of access[.]" *Brown*, 23 A.3d at 557.

*McCree* drives the Majority's decision today, agreed in *Hernandez* that "no majority expression emerged from *McCree*" on "the contours of the Pennsylvania automobile exception." *Id.* at 1287 (Castille, J., concurring). The Majority today simply ignores that the very same members of the Court who decided *McCree* stated, just six months later, that they had not reached any consensus on the meaning of the limited automobile exception in *McCree*. There was no overlap on the concept of the limited automobile exception between the OAJC and Justice Castille's concurrence in *McCree* that can support application of the *Marks* rule. Moreover, read through the lens of *Alexander*, I believe this Court must expressly abandon any notion that there is a free-standing, limited automobile exception to the warrant requirement for the following reasons.

Implicit in our constitutional scheme is the principle that the needs of law enforcement, although important, do not automatically trump individual rights enshrined in Section 8. In interpreting the Fourth Amendment, the United States Supreme Court balances these often-competing concerns through the lens of "reasonableness,"[14] but this Court "has struck a different balance" under Section 8, giving "greater deference" to the privacy rights enshrined in Section 8 than those "inherent in the Fourth Amendment." *White*, 669 A.2d at 902. Consequently, when balancing the needs of law enforcement against Section 8's warrant requirement, the Commonwealth must show more than a mere hypothetical exigency; accepting anything less would elevate the needs of law enforcement over the rights of the citizens they are entrusted to protect. *See Alexander*, 243 A.3d at 204 ("If the United States Constitution tips the scale towards law enforcement needs in analyzing Fourth Amendment questions, our own charter does not when addressing Article I, Section 8."); *see also Hernandez*, 935 A.2d 1283 (requiring proof of

---

[14] "[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. 648, 654 (1979).

more than a mere claim of danger to justify the warrantless search of a vehicle on safety grounds).

The limited automobile exception was never clearly defined by this Court as the law of Pennsylvania. As discussed above, members of this Court vacillated for decades in trying to define it in relation to the federal automobile exception. In that regard, *Alexander* may have confused the matter by suggesting a "return" to that doctrine, although it is clear enough that one version of the doctrine was enforced by the Superior Court between the time of *Brown* and *Gary*, and subsequently resurrected following *Alexander* in cases such as *McMahon* and *Davis*. However, this Court did not review the limited automobile exception in *Alexander*, we reviewed *Gary*'s adoption of the federal automobile exception. Thus, *Alexander*'s references to the limited automobile exception must be read in that context.

Furthermore, the limited automobile exception stands in direct conflict with *Alexander*'s mandate that courts must decide "whether exigent circumstances justif[y] warrantless searches in **discrete** scenarios, with a focus on the **particular** facts." *Alexander*, 243 A.3d at 208. Applying *Brown*, the lower courts are employing the limited automobile exception in all circumstances when 1) probable cause arises suddenly, in 2) circumstances where there is no prior opportunity for police to obtain a warrant.[15] The Majority takes an even more extreme view today, totally disregarding the prior-opportunity-to-obtain-a-warrant condition, and thereby adopting a standard that this Court never applied before *Gary*.

---

[15] *Brown*, 23 A.3d at 557 (stating "where police officers observe incriminating-looking contraband in plain view in a vehicle from a lawful vantage-point, the lack of advance notice **and** opportunity to obtain a warrant provides the officers with a lawful right of access to seize the object in question) (emphasis added).

The first component of the limited automobile exception according to **Brown**—which the Majority perplexingly establishes today as the only component of the exception—is absurd for its banality in relation to the warrant requirement. It is axiomatic that probable cause must always exist before a warrant can be obtained, and so there is nothing remotely unique about probable cause developing before police can obtain a warrant. That is how warrants work—the development of probable cause is a necessary **prerequisite** for police to obtain a warrant. In no circumstances can the issuance of a warrant precede a finding of probable cause.

The other temporal aspect of the first component of the *Brown* standard ostensibly gives credence to the notion that dispensation with the warrant requirement is dependent on how much time elapses after the development of probable cause. But when police obtain a warrant, our temporal concern about probable cause has traditionally revolved around the staleness of information, not its recentness. *See Commonwealth v. Leed*, 186 A.3d 405, 413 (Pa. 2018) (explaining that information that might otherwise support a warrant can become stale if too old, such that "probable cause may no longer exist") (citation omitted). The idea that information supporting probable cause is too fresh to require a warrant is nonsensical—to the contrary, it is the ideal type of information for purposes of establishing probable cause in a warrant application.

The sudden development of probable cause simply does not define an exigency that would justify dispensation of the warrant requirement. It runs directly contrary to our mandate in *Alexander*, operating as a per se exigency exception, because it will arise in every traffic stop where police discover evidence of contraband in plain view, regardless of whether police have ample time to obtain a warrant, and regardless of the presence of an actual emergency that compels an immediate action to assuage that emergency. Indeed, if the only emergency is the sudden development of probable cause, the

immediate seizure of the contraband does exactly nothing to alleviate that emergency. Probable cause does not retroactively develop less suddenly because police seize the contraband without a warrant. By contrast, if there is a legitimate safety issue affecting the officers or the public arising out of contraband such as a firearm remaining in plain view, the immediate seizure of the firearm actually alleviates the attendant risk.

Moreover, reliance on the sudden-development-of-probable-cause rationale renders the third element of the plain view test wholly superfluous when the object in plain view is in a vehicle. We would certainly reject such per se exigency if a court attempted to apply it when police saw contraband through the window of a home.[16] Something more must be required to pierce the warrant requirement than the timing of the onset of probable cause.

Justice Saylor, commenting in *Perry* about prior decisions stating that Section 8 requires a showing of both probable cause and exigency in every case, cogently remarked that it did not "appear to have been the Court's intent to dilute the exigent circumstances requirement by defining it solely in terms related to the development of probable cause." *Perry*, 798 A.2d at 719 (Saylor, J., concurring). I agree. The sudden-development-of-probable-cause rationale is a form of bootstrapping that focuses too much on probable cause and too little on any actual emergency or analogous circumstance that impedes police in their ability to procure of a warrant. As we clearly

---

[16] In her concurrence, Chief Justice Todd rationalizes the seizure in this case based on her view that, because the contraband is in plain view, "citizens' privacy interests are at their lowest point[.]" Concurring Op. at 3 (Todd, C.J., concurring). We are left to wonder whether she would apply the same logic to contraband observed through a window in plain view in an individual's home and, if not, what the distinction would be. As I explain below, the focus on privacy here is utterly misplaced, as the possessory interest in both the car and the home are not at all diminished by observations of contraband in plain view. Privacy concerns arise under the first two prongs of the plain view doctrine, both of which were conceded here by Saunders, whereas the lawful access prong does not concern privacy at all.

stated in *Alexander*, "the *Gary* approach is antithetical to Article I, Section 8 **because** it permits warrantless searches even in scenarios where it is beyond question that police officers could have sought a warrant before the vehicle is searched." *Alexander*, 243 A.3d at 204 (emphasis added). The same must be true of this aspect of the limited automobile exception. As such the sudden-development-of-probable-cause rationale cannot survive *Alexander*. Because freshly-developed probable cause is ideal for purposes of obtaining a warrant, it should never be used to justify an exception to the warrant requirement. The Majority errs today by concluding otherwise.[17]

## The Plain View Doctrine

The plain view doctrine is an analytical framework that we often use to determine if a warrantless seizure is justified. Under the plain view doctrine, police may seize contraband without a warrant if 1) from a lawful vantage point, an officer observes the item in plain view; 2) the incriminating nature of the object is immediately apparent; and 3) the officer has a lawful right of access to the object. *Commonwealth v. McCullum*, 602 A.2d 313, 320 (Pa. 1992) (citing *Horton*, 496 U.S. at 136–37). The Majority's decision today misconstrues or misapprehends the nature of the doctrine by conflating the purposes of the third prong with the first two.

---

[17] The second component of the *Brown* standard concerns whether it is reasonable for police to get a warrant before the search occurs. The Majority has abandoned this component of the *Brown* standard without a clear explanation.

I believe that component merely articulates the exigency exception potentially applicable to all warrantless searches. *See Commonwealth v. Trahey*, 228 A.3d 520, 530 (Pa. 2020) (stating that an exception to the warrant requirement exists when, coupled with probable cause, "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable") (quoting *Missouri v. McNeely*, 569 U.S. 141, 149 (2013); *id.* ("Although an exigency may present itself in a variety of contexts, its defining trait is a "compelling need for official action and **no time to secure a warrant**.") (emphasis added) (quoting *McNeely*, 569 U.S. at 149).

Unfortunately, our statement of the issue in our order granting allowance of appeal,[18] and the Majority's decision today, perpetuate the common mistake of calling this doctrine the plain view "exception" to the warrant requirement, an oft-repeated misnomer. The doctrine is not an exception, it

> provides grounds for **seizure** of an item when an officer's access to an object has some prior justification under the Fourth Amendment. "Plain view" is perhaps better understood, therefore, not as an independent "exception" to the warrant clause, but simply as an extension of whatever the prior justification for an officer's "access to an object" may be.

*Texas v. Brown*, 460 U.S. 730, 738–39 (1983) (footnote and quotation marks omitted) (emphasis added).

The *Horton* Court further explained that

> [t]he "plain-view" doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable, but this characterization overlooks the important difference between searches and seizures. If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy. **A seizure of the article, however, would obviously invade the owner's possessory interest.** If "plain view" justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches.

*Horton,* 496 U.S. at 133–34 (footnotes and citations omitted) (emphasis added).[19]

In practical terms, the first two elements of the plain view doctrine speak to the lawfulness of the initial observation and whether probable cause exists—the search

---

[18]  *See* n.1 *supra.*

[19]  As noted in *Coolidge v. New Hampshire*, 403 U.S. 443 (1971), "it is important to keep in mind that, in the vast majority of cases, any evidence seized by the police will be in plain view, at least at the moment of seizure." *Id.* at 465. Thus, seeing an incriminating object in plain view is the not the legal justification for a seizure, and the plain view doctrine does not supply the legal justification by itself. More is always required.

elements. Neither of those elements are implicated in this case; Saunders does not dispute the incriminating nature of the firearm or the fact that it was initially observed in plain view from a lawful vantage point. He contests only the Commonwealth's satisfaction of the third prong of the plain view doctrine—the seizure element—contending that Officer Ibbotson did not have lawful access to the firearm when he seized it.

Here, the majority acknowledges Saunders' assertion that a plain view seizure cannot be justified if it "is effectuated by unlawful trespass." Majority Op. at 23 (quoting Saunders' Brief at 10). But the Majority then wholly ignores the distinction between the plain view search and the subsequent seizure that occurred, rationalizing that the warrantless trespass was justified because it did not invade a space obscured from plain view, e.g., the glove box, trunk, or other closed storage compartments inside the vehicle. *Id.* But this ignores the obvious: Officer Ibbotson invaded the interior of the car itself without a warrant, based solely on the operation of the first two prongs of the plain view test. He committed a trespass only permitted by a warrant or an exception thereto. The use of the first two prongs of the plain view doctrine to fully satisfy the third renders the third prong meaningless (and, as explained above, the sudden development of probable cause is not an exigency that provides an exception to the warrant requirement).

In some circumstances, police will have already established lawful access to the contraband when it is observed, such as when contraband is discovered in plain view during the execution of a valid warrant,[20] or when police are lawfully in a protected space for another reason, *e.g.*, by consent. This is not one of those cases. It is not claimed by the Commonwealth, nor do the facts of this case suggest, that Officer Ibottson had authority to enter the vehicle before he observed the firearm. Rather, this case involves

---

[20] This circumstance arose in *Horton*, where police were already inside Horton's home pursuant to a valid warrant when they observed evidence of a crime in plain view.

whether an exception to the warrant requirement provided Officer Ibbotson with lawful access. For the reasons discussed above, the limited automobile exception is not an exigency that satisfies the lawful access requirement. The fact that probable cause arose suddenly informs only the probable cause prong of the plain view test in any event, and there has never been a dispute in this case regarding the existence of probable cause.

The Majority's assertion that Officer's Ibbotson's intrusion into the physical space of Saunders' vehicle in this case was "decidedly minimal" is irrelevant for purposes of the third prong of the plain view doctrine.[21] The Majority focuses entirely on Saunders' privacy interests regarding the search of his vehicle, an error of analysis that undermines the core principles of the plain view doctrine itself. *See* Majority Op. at 23-24. *Horton* is directly relevant here and contradicts the Majority's analysis in this regard. While the fact that the firearm was in plain view renders minimal Saunders' privacy interest in the location where it was found, that is not what is at issue when a seizure occurs pursuant to the plain view doctrine. *Horton* teaches that the third prong of the plain view doctrine – the only prong at issue in this case – implicates Saunders' possessory interest with regard to the **seizure** that occurred. *Horton,* 496 U.S. at 133–34. A seizure is a seizure and a violation of Saunders' possessory interest cannot be minimized simply because his privacy interest was negligible; these are not interchangeable concepts. The Majority and the Chief Justice's concurrence conflate the interests at stake here by declaring Officer Ibbotson's warrantless seizure to be trivial based on a privacy-based rationale.

---

[21] The factual representation that Officer Ibbotson only reached his hand slightly inside the vehicle is belied by the record in this case. After seizing the weapon and placing it in the police car, Officer Ibbotson returned to Saunders' car and rummaged through it for several minutes. *See* Ibbotson's Body Cam Video, at minutes 5:30-6:30; 7:30-8:30. However, because Saunders did not challenge the seizure of anything but the firearm, I will focus on Officer Ibbotson's actions before that seizure occurred.

The Majority minimizes Saunders' possessory interest in the seized firearm by relying on inapposite federal caselaw.[22]  More to the point, the Majority's reliance on

---

[22]  The Majority plucks a quote out of context from *United States v. Place*, 462 U.S. 696 (1983), for the proposition that the "intrusion on possessory interests occasioned by a seizure of one's personal effects can vary both in its nature and extent."  Majority Op. at 24 n.11 (quoting *Place*, 462 U.S. at 705).  However, in that case that did not involve the plain view doctrine, police seized the defendant's luggage based only on reasonable suspicion, in order to have it later examined by drug-sniffing dogs.  *Place*, 462 U.S. at 699.  The *Place* Court ultimately held that the seizure was unconstitutional.  *Id.* at 710.  In discussing the scope of the intrusion on the defendant's possessory interest in the luggage, the *Place* Court observed than an intrusion upon possessory interests can vary in "nature and extent."  *Id.* at 705.  But the Supreme Court then immediately compared a hypothetical scenario where a seizure is made "after the owner has relinquished control of the property to a third party" to the facts in *Place*, where a seizure occurred "from the immediate custody and control of the owner."  *Id.*  There is no analogy to be drawn to the facts of this case from the hypothetical scenario discussed in *Place*.  *Place* provides no authority for the Majority to disregard Saunders' possessory interest.

The other cases cited by the Majority are not controlling, and do not provide persuasive authority.  In *United States v. Williams*, 592 F.3d 511, 523 (4th Cir. 2010), the Fourth Circuit stated that the seizure of child pornography on a computer did not "interfere with Williams' possessory interests" because "once their nature as contraband became apparent, Williams' possessory interests were forfeited."  *Williams* did not provide any citation to support the legal conclusion that one cannot maintain a possessory interest in contraband, and it only made that statement in an alternative analysis.  *Williams*, 592 F.3d at 521 (stating that even if the court "were to conclude that the warrant did not authorize a search for child pornography," it would reach the same conclusion under the plain view doctrine).  Thus, the quote cited by the Majority is plainly dicta that was not essential to the holding in *Williams*.

The Majority also barks up the wrong tree by citing *United States v. Reed*, 141 F.3d 644 (6th Cir. 1998).  Suspecting a burglar was present, Reed consented to have police release a dog to search inside his apartment.  While the dog did not discover a burglar, it did alert to Reed's narcotics.  When the canine officer's handler subsequently went inside with Reed's consent, the officer discovered narcotics in plain view that were revealed by the dog's search.  Reed argued on appeal that the dog had exceeded the scope of consent to search the apartment, and that the evidence was not in plain view if the dog had dislodged it from a hidden location. The court rejected those arguments, concluding that no Fourth Amendment search had occurred because the officer and the dog were both "legally present at their vantage when their respective senses are aroused by obviously incriminating evidence[.]"  *Reed*, 141 F.3d at 649.  Thus, unlike here, the plain view seizure in *Reed* occurred while the officer already had lawful access to the contraband.  The *Reed* Court then remarked, without citation and after the lawful access question had been decided, that "there is no possessory interest in contraband."  *Id.* at 650.

federal caselaw is misguided for reasons based on our own jurisprudence from our Charter. Pursuant to Article 1, Section 8 of the Pennsylvania Constitution, this Court has long accorded automatic standing "with no preliminary showing of a proprietary or possessory interest by the defendant ... where possession at the time of the contested search and seizure is an essential element of the prosecution's case." *Commonwealth v. Hawkins*, 718 A.2d 265, 267 (Pa. 1998). When we adopted our automatic standing rule in *Commonwealth v. Sell*, 470 A.2d 457, 468 (Pa. 1983), we agreed with Justice Marshall's dissent in *United States v. Salvucci*, 448 U.S. 83 (1980) (rejecting an automatic standing rule in federal courts), where he reasoned that a possessory charge "itself alleges a[ possessory] interest sufficient to support a Fourth Amendment claim" and that to hold otherwise allows the prosecution to take diametrically opposed positions during the prosecution of the same criminal offense. *Salvucci*, 448 U.S. at 97 (Marshall, J., dissenting). Although this is not a case about standing, the same rationale applies. The Majority would allow the Commonwealth to place Saunders in prison for a decade based on his possessory interest in the seized firearm while simultaneously holding that the very same possessory interest is not sufficient to require the Commonwealth to obtain a warrant. This inconsistency is both legally and morally untenable.

### Exigency Analysis[23]

The facts of this case are quite simple and undisputed by the parties, in large part because the at-issue police-citizen interaction was recorded on two body cameras worn

---

[23] The Commonwealth did not argue for the Majority's interpretation of *McCree* on the limited automobile exception. *See* Commonwealth's Brief at 14 (stating the Commonwealth agrees "that *McCree* should not be viewed as embodying a *per se* rule that the police are never obliged to seek a warrant before removing contraband in plain view from a vehicle."). The Commonwealth interpreted *McCree* to mean that it still had the burden of showing some exigency to bypass the warrant requirement beyond the fact that probable cause arose suddenly. *Id.* ("Under some circumstances, a warrant may well be required, even where police observe what is obviously incriminating evidence (continued…)

by Officer Ibbotson and his partner. Officer Ibbotson lawfully stopped Saunders for a minor traffic infraction in Philadelphia after dark in November of 2020. While Saunders searched for documents, Officer Ibbotson observed him secreting a firearm under his seat after Saunders had denied having a weapon. Officer Ibbotson signaled his concern to his partner and asked Saunders to exit the vehicle. Saunders complied, was swiftly detained, and placed in the back of the officers' police car in handcuffs. Approximately 90 seconds later, Officer Ibbotson returned to Saunders' vehicle, reached inside through the still-open drivers' side door, and seized the firearm.[24] He removed the loaded magazine from the firearm and placed both it and the firearm on the drivers' side seat of his patrol car, in which his partner and Saunders were both located. Officer Ibbotson then returned to Saunders vehicle and began rummaging through the interior of the vehicle on two additional occasions before the footage from the bodycams ends.

Due to the Majority's resolution of this case on the limited automobile exception,[25] it did not address the Commonwealth's assertion that the presence of a firearm created

_____

without advance warning."). Saunders argued that no exigency justified the warrantless seizure that occurred. Accordingly, I will address whether an exigency existed that would satisfy the lawful access prong of the plain view doctrine, having determined that the limited automobile exception cannot do so.

[24] Ibbotson's Body Cam Video, at minute 4:15.

[25] The Majority surprisingly claims it is "not adopting or applying" the limited automobile exception, immediately after resurrecting a version of it from the ashes of *McCree*, which it does to fulfill the requirements of the lawful access prong of the plain view doctrine. Majority Op. at 21 n.9. But the Majority further insists that it is only applying "plain view exception." *Id*. If this sounds confusing, it is, because the Majority is sowing confusion. As discussed above, there is no plain view "exception," and continuing to construe the plain view doctrine as an stand-alone exception to the warrant requirement contravenes controlling case law. *See Texas v. Brown*, 460 U.S. at 738–39; *Horton,* 496 U.S. at 133–34. The *McCree* plurality understood this when it applied the plain view doctrine, and Justice Castille joined the OAJC in that respect. *See McCree*, 924 A.2d at 627–28 (OAJC) (citing both *Texas v. Brown* and *Horton* to define the plain view doctrine); *id*. at 631 (holding "the limited automobile exception under Article I, § 8 may ... serve as the basis of the lawful right to access an object seen in plain view inside a vehicle."); *see also* (continued…)

an exigency. I strongly believe that police officers should not be expected to take unnecessary risks when firearms are involved in a citizen interaction, but we are also compelled to not conjure up scenarios not supported by the record when deciding cases. *See Hernandez*, 935 A.2d at 1282 ("The fact that potential for danger to police or the public is enough to constitute exigent circumstances does not mean that a mere assertion of danger is sufficient."). Here, there is no more than a mere assertion of danger by the Commonwealth, based on a vague claim of "officer safety" by Officer Ibbotson, which he asserted was the reason why he handcuffed Saunders and locked him in the police car. N.T., 5/20/2024, at 23. He did not assert that he subsequently seized the firearm for officer safety. This is plainly not enough under *Hernandez* to invoke a safety exception, which rejected the sufficiency of "a mere assertion of danger[.]" *Hernandez*, 935 A.2d at 1282. Rather, police must "be able to articulate the danger posed under the specific circumstances of the case." *Id.* Here, Officer Ibbotson did not even assert that he seized the firearm for officer safety concerns; the risk that concerned him had abated once Saunders was safely secured in the police car.[26]

Not only did Officer Ibbotson not claim that he seized the firearm for officer safety concerns, but his subsequent actions refute any inference that he acted pursuant to such

---

*id.* at 634 (Castille, J, concurring) (joining the OAJC except for its discussion of the contours of the limited automobile exception). There is no "plain view exception" and no party argued otherwise. The plain view doctrine has long been understood to require the application of an independent exception to the warrant requirement to satisfy the lawful access prong. It the Majority intends to rewrite well-settled law sua sponte, it should at least provide a rationale for doing so.

The Majority further asserts that it has not crafted a per se exigency exception that runs afoul of *Alexander*, *see* Majority Op. at 21 n.9, but this is belied by common sense. It is the essential nature of plain view doctrine cases that probable cause arises suddenly when contraband is observed in plain view.

[26] It is highly probable that Officer Ibbotson seized the firearm believing he was permitted to do so pursuant to the then-applicable federal automobile exception.

a concern. As shown on his body cam video, immediately after he seized the firearm, Officer Ibbotson removed the loaded magazine and placed both parts on the front seat of the police car then housing Saunders, far closer to Saunders than the firearm had been seconds beforehand. *See* Ibbotson's Body Cam Video, at 5:00. The implication is clear. Officer Ibbotson, quite rationally as an objective matter, had no concern whatsoever that Saunders would escape the back seat of the cruiser while handcuffed. Nothing in the record supports that he seized the firearm due to a continued threat to officer safety because Saunders was secured in the police vehicle, handcuffed. The Commonwealth's ex post facto construct of a dangerous scenario requiring a warrantless seizure of the firearm is belied by the videographic record of this encounter and detention.[27] After seizing the gun, the officer placed it in the front seat of the same vehicle in which Saunders was detained, dispelling any notion that officer safety was a concern.

### Conclusion

I would hold that there was no precedential articulation of the limited automobile exception in *McCree*, and that such an exception is not viable after *Alexander* in any event. Thus, I would explicitly reject *Brown*, as well as other Superior Court cases such as *McMahon* and *Davis* that have applied *Brown* following *Alexander*. Additionally, applying *Alexander*'s totality-of-the-circumstances exigency analysis, I would conclude that no exigency existed under the specific facts of this case to support the warrantless seizure of the firearm from Saunders' vehicle under the lawful access prong of the plain view doctrine. Accordingly, I respectfully dissent.

---

[27] Indeed, the record supports the fact that the officers could have locked the vehicle while they awaited a warrant. *See* N.T., 5/20/2021, at 23 (Officer Ibbotson's stating that he took Saunders' keys before the seizure). Additionally, none of the fears regarding other individuals' ability to access the firearm were articulated by Officer Ibbotson. *Hernandez* clearly rejected the use of bald claims of danger to escape the warrant requirement.

Justice Wecht joins this dissenting opinion.